# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

Gallatin Manor, LLC,

       Plaintiff,

v.                                        Case No. 19-11772

                                            Hon. Denise Page Hood

PNC BANK, N.A.,

       Defendant.

_____/

## ORDER GRANTING DEFENDANT'S MOTION TO STRIKE, [#10] DEFENDANT'S MOTION TO DISMISS, [#5] AND DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT [#14]

## I.    INTRODUCTION

### A. Procedural History

On or about May 13, 2019, Plaintiff Gallatin Manor[1] ("Plaintiff") filed its action in Michigan state court alleging that Defendant PNC Bank's ("Defendant") failure to file a termination statement violated Michigan Compiled Laws § 440.9513. [ECF No. 1, Pg.ID 12] On June 14, 2019, Defendant filed a notice of

---

[1] In 2012, the Limited Liability Company Gallatin Manor was dissolved. [ECF No. 14, Pg.ID 164] In 2015, Jeffrey Gallatin formed another company of the same name. [ECF No. 14, Pg.ID 169] Throughout this Order, the different companies will be designated as "Gallatin I" and "Gallatin II." Plaintiff will be referred to as "Gallatin II."

removal to federal court. [ECF No. 1] On July 15, 2019, Defendant filed a Motion to Dismiss. [ECF No. 5] On August 21, 2019, Plaintiff filed an untimely Amended Complaint without leave and a Response to Defendant's Motion to Dismiss. [ECF No. 7; ECF No. 8] Plaintiff's Amended Complaint sought statutory damages for Defendant's Failure to Comply with MCL § 440.9525 ("Count I") and Negligent Misrepresentation ("Count II").

On September 4, 2019, Plaintiff filed a Reply to Defendant's Response to its Motion to Dismiss. [ECF No. 9] Defendant also filed a Motion to Strike Plaintiff's Amended Complaint on September 4, 2019. [ECF No. 10] On September 19, 2019, Plaintiff filed its Response to Defendant's Motion to Strike. [ECF No. 12] Defendant filed its Reply on September 25, 2019. [ECF No. 13] On September 26, 2019, Plaintiff filed a Motion for Leave to Amend its Amended Complaint. [ECF No. 14] Defendant filed a Response on October 4, 2019. [ECF No. 15]

On October 16, 2019, the Court heard oral arguments regarding Plaintiff's Motion to Amend and Defendant's Motion to Dismiss. After reviewing the parties' briefs and listening to their oral arguments, the Court finds that Plaintiff's Amended Complaint is futile and **DENIES** Plaintiff's Motion for Leave to Amend Complaint. And for the reasons set forth below, the Court **GRANTS** Defendant's Motion to Dismiss.

## B. Factual History

In November 2000, Gallatin Manor ("Gallatin I") executed a "Business Credit Line and Security Agreement" ("the Agreement") with Defendant's predecessor in interest, National City Bank of Michigan/Illinois ("National City"). [ECF No. 14, Pg.ID 164] The Agreement granted Gallatin I a $35,000 credit line and granted National City a security interest in the following:

> All inventory, Chattel Paper, Accounts, Equipment and General Intangibles; whether any of the foregoing is owned now or acquired later; all accessions, additions, replacements, and substitutions relating to any of the foregoing; all records of any of the foregoing; all proceeds relating to any of the foregoing (including insurance, general intangibles and other accounts proceeds).

[ECF No. 10, Pg.ID 105 n.1]

Plaintiff's Amended Complaint states that the financing statement included the disputed commercial real estate property located at 332 E. Williams, Ann Arbor, MI ("the Property"). [ECF No. 14, Pg.ID 164]

Defendant filed continuation statements in both May 2005 and May 2010 to renew the original Agreement. [ECF No. 10, Pg.ID 106] On October 14, 2015, Defendant notified Plaintiff that National City was now PNC Bank. [*Id.*] Defendant filed another continuation statement that same day. [*Id.*]

On February 29, 2012, Gallatin I was dissolved pursuant to MCL § 450.4804. [ECF No. 14, Pg.ID 164] On March 9, 2012, Defendant was notified of Gallatin I's dissolution. [*Id.*] Plaintiff asserts that Defendant had six months to

make a claim against Gallatin I regarding the Agreement. [*Id.*] According to the

Michigan Limited Liability Company Act, Limited Liability Companies ("LLC")

dissolved in bankruptcy must notify potential claimants of dissolution. § 450.4806.

Dissolved LLCs must set the deadline for filing claims "no less than six months"

after the notice was sent. § 450.4806. Defendant acknowledges that it did not

submit a claim to the bankruptcy trustee by the September 9, 2012 deadline. [ECF

No. 10, Pg.ID 109]

Subsequently, Plaintiff recently applied for a rate-lock loan. [ECF No. 14,

Pg.ID 165] Plaintiff alleges that the interest rate on its rate-lock loan increased

because of Defendant's lien. [*Id.*] According to commercial lender UBS AG,

Plaintiff did not receive the lower interest rate because Defendant did not terminate

the lien at issue prior to the rate-lock deadline. [*Id.*] Plaintiff's interest rate

increased from 4.95% to 5.25%, which increased the cost of financing by

approximately $96,000.00.[2]

Plaintiff alleges that it repeatedly informed Defendant via "phone calls,

written correspondence, and in-person meetings" that receiving a termination

statement was time sensitive. [*Id.* at 172] Gallatin II was created on April 29, 2015,

and assigned the new state id no. 801816843. [*Id.* at 169] Gallatin II is the current

---

[2] ECF No. 14, Pg.ID 166 ("3.2 million dollars x the rate of .0525, as opposed to the rate of .0495 stated in the loan term sheet, which is [a] .0030 increase, which calculates to an additional $9,600.00/year x 10 years, equaling damages of $96,000.00 during the 10-year loan period.").

owner of the Property. [*Id.*] Plaintiff's Amended Complaint includes additional facts regarding the dissolution of Gallatin I and the alleged financial harm caused by Defendant's failure to file a termination statement. Plaintiff's Amended Complaint also added a negligent misrepresentation claim. [ECF No. 14-1]

Defendant argues that Plaintiff's Amended Complaint is untimely, filed in bad faith, and would be futile. Defendant claims that the new facts Plaintiff uses to bolster its claims were known to Plaintiff from the beginning. Defendant further asserts that Plaintiff only added additional facts after viewing Defendant's original Motion to Dismiss. Defendant specifically claims that Plaintiff's Amended Complaint is frivolous because (1) Plaintiff has no standing to pursue its claim; and (2) Plaintiff cannot state a claim upon which relief may be granted.

Although Plaintiff's Amended Complaint is untimely, the proposed amendments do not appear to consist of bad faith claims, claims that will impose undue prejudice against Defendant, or claims frivolously brought against Defendant. However, for the reasons discussed below, the Court finds that Plaintiff's Amended Complaint would be futile.

This matter is before the Court on Defendant's Motion to Strike Amended Complaint, Plaintiff's Motion for Leave to File Amended Complaint, and Defendant's Motion to Dismiss.

## II.    LEGAL ANALYSIS

### A. Standard of Review

In a case where a responsive pleading has been filed, a party may amend its pleading only with the written consent of the opposing party or by leave of the Court. Fed. R. Civ. P. 15(a)(2).  Defendants do not concur in Plaintiff's motion, so it is within the Court's discretion whether to grant Plaintiff's motion for leave to file an amended complaint.  Pursuant to Rule 15(a)(2), "leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a)(2).  The factors a court is to consider when determining whether to permit a plaintiff to file an amended complaint are:

(1)    the delay in filing the motion,

(2)    the lack of notice to the other party,

(3)    bad faith by the moving party,

(4)    repeated failure to cure deficiencies by previous amendments,

(5)    undue prejudice to the opposing party, and

(6)    futility of the amendment.

*Wade v. Knoxville Utilities Bd.*, 259 F.3d 452, 460 (6th Cir. 2001); *Perkins v. Am. Elec. Power Fuel Supply, Inc.*, 246 F.3d 593, 605 (6th Cir. 2001).  A district court may deny a plaintiff leave to amend his complaint when the proposed amendment would be futile. *See, e.g., Yuhasz v. Brush Wellman, Inc.*, 341 F.3d 559, 569 (6th

Cir. 2003) (citing *Foman v. Davis*, 371 U.S. 178 (1962)). An amendment is deemed futile when it would not withstand a Rule 12(b)(6) motion to dismiss. *Rose v. Hartford Underwriters Ins. Co.*, 203 F.3d 417, 420-21 (6th Cir. 2000).

### B. Standing

Defendant asserts that Plaintiff does not have standing to bring claims on behalf of the separate entity Gallatin I. Defendant argues that standing doctrine bars Plaintiff from bringing claims on behalf of Gallatin I in both Uniform Commercial Code ("UCC") and bankruptcy disputes. Defendant further argues that since Gallatin II is attempting to represent Gallatin I's interests, Gallatin II is not the "real party in interest."

Absent limited exceptions, all actions must be prosecuted in the name of the real party in interest. Fed. R. Civ. P. 17(a). "The person who is entitled to enforce the right asserted under the governing substantive law" is the real party in interest. *Certain Interested Underwriters at Lloyd's London, England v. Layne*, 26 F.3d 39, 43 (6th Cir. 1994).

### 1. Standing for Michigan Financial Statutes

To support its claims, Defendant states that Gallatin I was the debtor in the original Agreement and that Gallatin II is a separate entity with no rights to assert the legal rights of Gallatin I. Defendant uses *Zurich Insurance Co. v. Logitrans,*

*Inc.* to argue that Gallatin II is not a proper plaintiff. 297 F.3d 528 (6th Cir. 2002).

*Zurich* involved two insurance companies with different names, and the plaintiff

filed a motion to substitute plaintiffs. *Id.* The Sixth Circuit held that the original

plaintiff could not be substituted, because filing the case on behalf of Zurich

instead of its sister entity—American Guarantee—was not an understandable

mistake. *Id.* at 530 ("American Guarantee, a totally separate entity, which was not

vigilant in protecting its claims, cannot now benefit from Zurich Switzerland's

mistake . . . .").

Recent trends show that courts may "be lenient when an honest mistake has

been made in choosing the party in whose name the action is to be filed—both in

maritime and nonmaritime cases." *See id.* at 532 (citing *Levinson v. Deupree*, 345

U.S. 648 (1953). But this jurisprudence should not be misunderstood or

misconstrued. It is intended to prohibit forfeiture when determination of the

appropriate party to sue is difficult or when an understandable mistake has

occurred.

Although *Zurich* is not directly analogous to the instant case, *Zurich* is

instructive. Here, Gallatin II originally filed without differentiating between the

two entities. As Gallatin II indicates in its Amended Complaint, Gallatin II is a

separate corporate entity and Gallatin I is entirely dissolved. [ECF No. 14, Pg.ID

164] Unlike in *Zurich*, Gallatin II's mistake would not subvert an expired statute of

limitations but would instead bestow standing upon a party that is not the "real party in interest."

Gallatin II may have made an understandable mistake in failing to differentiate between Gallatin I and II, but the Court cannot discard Article III's standing requirements. *Id.* at 531. As Defendant highlights, Gallatin II's creation came well after Gallatin I's dissolution. Gallatin I has been dissolved for seven years. And Gallatin II has not "demonstrated a legally recognized relationship that would permit it to sue on a claim that belongs to Gallatin I." [ECF No. 10, Pg.ID 117]

As Defendant contends, the real party in interest is "the person who is entitled to enforce the right asserted under the governing substantive law." *Layne*, 26 F.3d at 43. To determine the real party in interest, the Court must ask "whether the substantive law creating the right being sued upon affords the party bringing the suit a substantive right to relief." *Id.*

Here, Gallatin II alleges that PNC violated MCL § 440.9625. MCL § 440.9625 provides that "failure to comply with [Article 9]" may result in damages. As Defendant highlights throughout its brief, the underlying substantive statute—MCL § 440.9625—only applies to the original debtor, Gallatin I. This assertion is further supported by Michigan's longstanding practice of acknowledging the corporate form of separate entities like Gallatin I and II. *See*

*Seasword v. Hilti, Inc.*, 449 Mich. 542, 547 (Mich. 1995) ("Michigan law presumes that, absent some abuse of corporate form, parent and subsidiary corporations are separate and distinct entities.")

The Court does not dispute that Gallatin II suffered an "injury in fact" when it was required to pay a higher interest rate. However, the laws that Plaintiff relies on do not envision Gallatin II as the proper plaintiff. The contested agreement was signed between Gallatin I and PNC. Since the existing lien was not discharged during Gallatin I's dissolution, the lien concerns Gallatin I and PNC. Gallatin II cites violations of various UCC provisions—MCL § 440.9101 *et seq.* However, the cited UCC provisions concern the original debtor, Gallatin I, and the secured party, PNC. Accordingly, Gallatin II does not have a cause of action under the statute. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 97 n. 2 (1998) (explaining that Congress probably did not intend the plaintiff to have standing under the contested statute, and that doubts against jurisdiction should disfavor jurisdiction).

Even assuming that Gallatin II's Amended Complaint focuses on the direct injury it received as the current owner of the Property, which was still affected by Defendant's continuation statement and lien,[3] Gallatin II's claim is still frivolous. Claims on behalf of dissolved LLCs are not barred simply because the LLC is dissolved. *Phillips-Johnson Properties, LLC v. Tru Fitness Studios, LLC*, No.

---

[3] PNC has since filed a UCC-3 termination statement on or about April 9, 2019. [ECF No. 5, Pg.ID 31]

325570, 2016 WL 594187, at *4 (Mich. Ct. App. Feb. 9, 2016). In fact, the

Michigan Legislature expressly intends that "[a] dissolved limited liability

company may sue and be sued, *in its name*, in the same manner as if dissolution

had not occurred." MCL § 4805(3) (emphasis added). Mr. Gallatin likely qualifies

as one who can sue on behalf of Gallatin I. But Mr. Gallatin did not file suit in

Gallatin I's name, hence Gallatin II is not properly before the Court. *Phillips-

Johnson Prop.*, 2016 WL 594187, at *8.

For Gallatin II to successfully bring a claim on behalf of Gallatin I under

MCL § 4805(3), it would have to establish third-party standing or show that it is

the "real party in interest." To determine whether Gallatin II is a real party in

interest, the Court must interpret MCL § 4805(3).

When interpreting state statutes, the Court must adhere to state

interpretations of the contested statute. *Bevan & Assocs., LPA, Inc. v. Yost*, 929

F.3d 366, 374 (6th Cir. 2019). And when the state supreme court has not yet

spoken on a statute, the Court "must predict" how the state's highest court would

rule. *United States v. Simpson*, 520 F.3d 531, 535 (6th Cir. 2008).

Published, on-point decisions issued by the Michigan Court of Appeals are

notably important "data" that the Court should consider in determining how the

Michigan Supreme Court would rule. *See Grantham & Mann, Inc. v. Am Safety

Prod. Inc.*, 831 F.2d 596, 609 (6th Cir. 1987). But they are not absolute on issues

involving Michigan law. The United States Supreme Court frequently recognizes that a federal court sitting in diversity may disregard a state intermediate appellate court ruling if the federal court "is convinced by other persuasive data that the highest court of the state would decide otherwise." *West v. AT&T*, 311 U.S. 223, 237 (1940).

Only one Michigan court has discussed the relevant statute—MCL § 4805(3)—and the extent to which third-parties can sue on behalf of dissolved LLCs. *Phillips-Johnson Properties, LLC*, 2016 WL 594187, at *4. However, *Phillips-Johnson* is not completely analogous because that case involved a plaintiff who directly sued a dissolved LLC, which the statute expressly allows. *Id.* Here, we have a plaintiff that is a separate legal entity, trying to sue on behalf of a dissolved LLC.

Since *Phillips-Johnson* is not directly on-point and there is a dearth of Michigan case law interpreting MCL § 4805(3), the Court must predict how the state supreme court would interpret the statute. *Stryker Corp. v. XL Ins. Am.*, 735 F.3d 349, 360 (6th Cir. 2012). When confronted with an argument over the meaning of a statute, the Supreme Court of Michigan has stated that the primary goal of statutory interpretation "is to determine and effectuate" legislative intent. *Gross v. Gen. Motors Corp.*, 448 Mich. 147, 158 (Mich. 1995).

The legislature specifically referenced "members or managers" in sections (1) and (2) of MCL § 4805. However, MCL § 4805(3) omits "members or managers" and provides that "[a] dissolved limited liability company may sue and be sued in its name . . . ." § 4805(3).

Expressly using certain language in a statute implies the exclusion of that language in other, similar provisions. *In re MCI Telecommunications Complaint*, 460 Mich. 396, 415 (Mich. 1999). Under this view, the Court could conclude that the Legislature's express mention of "members or managers" in sections (1) and (2) implies that it does not apply to section (3) of the statute.

If the Legislature purposely omitted "members or managers" from section (3), then the only other reasonable interpretation infers that the plain text prevails. *See Sun Valley Foods Co. v. Ward*, 460 Mich. 230, 237 (Mich. 1999) ("[Courts should] consider both the plain meaning of the critical word or phrase as well as 'its placement and purpose in the statutory scheme.'") (quoting *Bailey v. United States*, 516 U.S. 137, 145 (1995)).

Using permissible rules of statutory interpretation, there are only two reasonable interpretations of MCL § 4805(3). One, the Legislature unintentionally omitted "members or managers" from section (3) and the statute should mirror that of similar states, which allow members or managers to sue on behalf of dissolved LLCs, *see* Tenn. Code Ann. § 48-245-1201 ("After an LLC has been terminated,

any of its former managers, governors, or members may assert or defend, in the name of the LLC . . . ."); or two, the Legislature intentionally excluded "members or managers" and dissolved LLCs are the sole entities allowed to sue on their own behalf.

Regardless of which interpretation is correct, neither interpretation would allow Gallatin II to sue on Gallatin I's behalf. Allowing Gallatin II to sue on behalf of the dissolved LLC Gallatin I would violate both the standing doctrine and Michigan's longstanding adherence to respecting the "corporate form." *See Seasword*, 449 Mich. at 547.

Nor can Gallatin II satisfy the requirements for third-party standing. A plaintiff must usually "assert his own legal rights and interests and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975). The third-party exception is rare and allows federal courts to hear cases where a plaintiff can "show that (1) it has suffered an injury in fact; (2) it has a close relationship to the third party; and (3) there is some *hindrance* to the third party's ability to protect his or her own interests." *Mount Elliott Cemetery Ass'n v. City of Troy*, 171 F.3d 398, 404 (6th Cir. 1999) (emphasis added).

Here, Gallatin II has suffered an injury in fact and arguably has a close relationship with the third party, Gallatin I—both companies' sole owner is Jeffrey Gallatin. Despite this close relationship, third-party standing does not apply

because there is no hindrance to Gallatin I's ability to sue on its own behalf. Mr.

Gallatin can sue in an individual capacity or Gallatin I can exercise its right to sue

under MCL § 4805(3). Plaintiff's claim must be dismissed because Gallatin II does

not have standing. *See Roberts v. Hamer*, 655 F.3d 578, 581 (6th Cir. 2011)

("Where a plaintiff lacks statutory standing to sue, her claim should be dismissed

for failure to state a claim upon which relief can be granted.").

### 2. *Standing for Bankruptcy Claims*

Although Plaintiff does not bring a claim under bankruptcy law, Defendant

argues that Plaintiff's claims concerning the bankruptcy Order of Discharge are

barred by standing doctrine. The Court agrees.

Gallatin II's case is analogous to *In re Bahnsen*, 547 B.R. 779, 787 (Bankr.

N.D. Ohio 2016). *In re Bahnsen* determined that a non-debtor husband did not

have standing to sue on behalf of his wife, the actual debtor. *Id.* In ruling, the court

found that the husband did not satisfy third-party standing. *Id.* Third-party standing

is warranted when "(1) the relationship between the [litigant] and the third party is

such that the [litigant] is nearly as effective a proponent of the of the third party's

right as the third party itself, and (2) there is some obstacle to the third party

asserting the right." *Id.* (quoting *Knight v. Alabama*, 14 F.3d 1534, 1554 (11th Cir.

1994).

As Defendant indicates, Gallatin II was not created until 2015, and the trustee implemented the Order of Discharge in 2011. Since it was a personal bankruptcy and Mr. Gallatin can vindicate his own rights, he would be the appropriate party to challenge the 2011 Order of Discharge. [ECF No. 10, Pg.ID 109] And any action challenging an Order of Discharge is most "appropriate" in a bankruptcy court. *Stire v. US Bancorp*, No. 10-CV-13416, 2011 U.S. Dist. LEXIS 44651, at *16 (E.D. Mich. Apr. 26, 2011).

### C. Failure to State a Claim

#### 1. *Authorization of Continuation Agreement*

In addition to arguing that Gallatin II lacks standing, Defendant also asserts that MCL § 440.9509 is inapplicable because Defendant did not add collateral or a debtor. MCL § 440.9509 provides in relevant part that "[a] person may file an initial financing statement, amendment that adds collateral covered by a financing statement, or amendment that adds a debtor to a financing statement only if . . . ." Defendant states that since it did not add collateral or a debtor, it was authorized to file the continuation statement. Under MCL § 440.9708, Defendant was the only party needed to authorize the continuation statement. *See* MCL § 440.9708 (explaining that continuation statements are valid if "[t]he secured party of record [PNC] authorizes the filing").

*2. The Bankruptcy's effect on the Agreement*

Defendant argues that the bankruptcy Order of Discharge only addressed Mr. Gallatin's obligation to personally guarantee Gallatin I's obligations under the Agreement, but the discharge did not eliminate Gallatin I's lien. The Court agrees.

The Order of Discharge explains that it does not affect liens that have not been discharged. The Order states that "[a] creditor may have the right to enforce a valid lien, such as a mortgage or security interest, against the debtor's property after the bankruptcy, if that lien was not avoided or eliminated in the bankruptcy case." [ECF No. 10-5, Pg.ID 143]

Defendant cites *In re Kalabat* to argue that Gallatin I's lien survived Mr. Gallatin's personal bankruptcy. 592 B.R. 134, 143 (Bankr. E.D. Mich. 2018). *In re Kalabat* explains that a lien to secure payment of a prepetition debt prior to Chapter 7 bankruptcy "survives, or 'rides through' the Chapter 7 bankruptcy and bankruptcy discharge, unless the lien is avoided in the bankruptcy case." *Id. In re Kalabat* further provides that "a creditor with such a lien may seek to enforce its lien rights and collect on its secured claim . . . after discharge, even if the debtor's personal liability for the creditor's debt was discharged." *Id.* Although Defendant may not look to Mr. Gallatin personally for payment, Defendant "may look to the property securing the claim for satisfaction of its prepetition lien." *In re Botson*, 531 B.R. 719, 726 (Bankr. N.D. Ohio 2015) (quoting *In re Mayes*, 294 B.R. 145,

150 (10th Cir. BAP 2003)). Since Defendant's right to the prepetition lien survived Mr. Gallatin's bankruptcy, the Court finds that Defendant's Continuation Statement was appropriate.

### 3. Termination Statement

Defendant asserts that when the collateral involves non-consumer goods there is no automatic trigger requiring a secured party to submit a termination statement within one month. Rather, Defendant claims that under MCL § 440.9513, a secured party need only provide a termination statement within 20 days after the secured party received an authenticated demand from the debtor. *See* MCL § 440.9513(3) ("In cases not governed by subsection (1) [consumer goods], within 20 days after a secured party receives an authenticated demand from a debtor, the secured party shall cause the secured party of record for a financing statement to send to the debtor a terminating statement for the financing statement.").

Defendant argues that Plaintiff never claims that it satisfied MCL § 440.9513(3) by making an "authenticated demand" to PNC. Defendant further indicates that it raised this argument in its Motion to Dismiss, but Plaintiff has not "add[ed] any facts suggesting that an authenticated demand was made." [ECF No. 10, Pg.ID 122] Under the UCC, to authenticate means "to sign; or . . . with present

intent to adopt or accept a record, to attach to or logically associate with the record an electronic sound, symbol, or process." UCC § 9-102.

Plaintiff's Amended Complaint merely alleges that Plaintiff made "phone calls, written correspondence, and in-person meetings." [ECF No. 7, Pg.ID 63] The Court must ascertain whether a complaint's factual allegations, taken as true, feasibly suggest an entitlement to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). This task is "context-specific" and "requires the reviewing court to draw on its judicial experience and common sense." *Id.* If the well-pleaded facts lead the court to infer less than the "mere possibility of misconduct," the complaint is insufficient. *Id.*

Plaintiff's failure to respond to Defendant's argument and establish that it made an "authenticated demand," and Plaintiff's vague assertions regarding its communications with Defendant illustrate that Plaintiff did not make an authenticated demand as required by the statute. The Court finds that Plaintiff's actions fall short of the "authenticated demand" required to hold Defendant's liable for not issuing a termination statement.

### 4.  *Negligent Misrepresentation*

Plaintiff also alleges that PNC's actions constitute negligent misrepresentation. Defendant argues that Gallatin II's Negligent Misrepresentation claim is futile because Michigan does not recognize the tort of negligent

misrepresentation outside of the title search context. Michigan common law

defines fraud or fraudulent misrepresentation as:

> a defendant making a false representation of material fact with the intention that the plaintiff would rely on it, the defendant either knowing at the time that the representation was false or making it with reckless disregard for its accuracy, and the plaintiff actually relying on the representation and suffering damage as a result.

*Alfieri v. Bertorelli*, 295 Mich. App. 189, 193 (Mich. 2012).

After reviewing Michigan caselaw, it appears that the Michigan Supreme

Court does not recognize the tort of negligent misrepresentation outside of title

search cases. *See MacDonald v. Thomas M. Cooley Law Sch.*, 724 F.3d 654, 667

(6th Cir. 2013) ("[T]he Michigan Supreme Court stressed that it recognized the tort

of negligent misrepresentation only in the title-search context.").

When exercising diversity subject-matter jurisdiction, the Court must apply

Michigan law as determined by the Michigan Supreme Court. *See Erie R.R. v.*

*Tompkins*, 304 U.S. 64, 78 (1938). The Court must follow the Sixth Circuit's

interpretation of Michigan law when the Michigan Supreme Court has not ruled on

an issue, and decisions by the Michigan Court of Appeals are nonbinding. *See Ruth*

*v. Bituminous Cas. Corp.*, 427 F.2d 290, 292 (6th Cir. 1970); *see also Horizon*

*Lawn Maint., Inc. v. Columbus-Kenworth, Inc.*, 188 F. Supp. 3d 631, 635 (E.D.

Mich. 2016). Given the Sixth Circuit's guidance in *MacDonald*, the Court finds

that Gallatin II's Negligent Misrepresentation claim is futile.

### III.   CONCLUSION

For the reasons set for above,

IT IS HEREBY ORDERED that Defendant's Motion to Strike Plaintiff's Amended Complaint [#10] is **GRANTED**, and Plaintiff's Motion for Leave to File Amended Complaint [#14] is **DENIED**.

IT IS FURTHER ORDERED that Plaintiff's Amended Complaint [#7] is **STRICKEN** from the docket.

IT IS FURTHER ORDERED that Defendant's Motion to Dismiss [#5] is **GRANTED**.


s/Denise Page Hood
Chief Judge, U. S. District Court

DATED:   March 23, 2020